IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.    5:16cr28/RH/MAF
                                                    5:19cv488/RH/MAF

MICHAEL RAY ALFORD,
          Defendant.

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court on Defendant Michael Alford's[1]

amended Motion to Vacate, Set Aside, or Correct Sentence under 28

U.S.C. § 2255, as supplemented.    Docs. 192, 202, 203, 209, 230.    The

Government responded in opposition (Doc. 200), and Defendant filed a

reply.    Doc. 211.    The case was referred to the undersigned for the

issuance of all preliminary orders and any recommendations to the district

court regarding dispositive matters.    *See* N.D. Fla. Loc. R. 72.2(B); *see*

*also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).    The court recommends

---

[1] Alford has indicated in court filings that she is transgender and lives her life as female. (*See, e.g.,* Doc. 192 at 2.)   The court thus uses feminine pronouns in referring to her in this action, as the Eleventh Circuit has recently done.   (Doc. 264; *but see* Doc. 136 at 10-11 (when the court asked how Alford would prefer to be addressed, Mr. Alford or Ms. Alford, Alford indicated "Just Mister, that's fine."))

that the § 2255 motion be denied without an evidentiary hearing.    *See*

Rules Governing Section 2255 Cases 8(a) and (b).

I.    PROCEDURAL BACKGROUND AND SUMMARY OF FILINGS

On November 1, 2016, a grand jury charged Defendant in a two-

count indictment with (1) knowingly receiving or attempting to receive child

pornography in violation of 18 U.S.C. § 2252A(a)(2) and 2252A(b)(1)

between July 22, 2009 and December 9, 2014 ("Count One") and (2)

knowingly possessing child pornography in violation of 18 U.S.C. §

2252A(a)(5)(B) and 2252A(b)(2) on December 9, 2014 ("Count Two").

Doc. 1.

Defendant was arrested and ordered detained following a hearing

held on November 7, 2016.   Doc. 19.   In determining detention was

appropriate, the court weighed heavily Defendant's prior federal conviction

for interstate transportation of child pornography in N.D. Fla. Case

5:02cr8/RH/CAS, and the fact that she had served a term of imprisonment

and was still on supervised release for that offense during the time frame

set forth in the indictment in this case.[2]   *Id.* at 2.   The court also noted

[2] Defendant's PSR reflects that she was arrested after sending a picture of an adult

that on April 21, 2014, Defendant had been sentenced for five years of probation for failure to properly register as a sex offender.

Defendant, originally represented by Assistant Federal Public Defender Michelle Daffin and later by CJA counsel Jonathan Wesley Dingus, Esq., moved to suppress the evidence of child pornography, claiming the search warrant which led to the discovery of the child pornography was overbroad.   Docs. 28, 33, 44, 46.   The court denied the motion after a hearing.   Docs. 49, 52.   Defendant also filed a motion in limine seeking to exclude evidence of her prior conviction of a child pornography offense and evidence of her lawful possession of child erotica. Doc. 51.   The court also denied this motion, noting it would give limiting instructions as appropriate at trial.   Docs. 53, 55.

After a two-day trial, a jury convicted Defendant on both counts. Docs. 68, 134, 135.   Count Two was dismissed upon the Government's motion at sentencing.   Doc. 136 at 26-27.

---

male having sexual intercourse with a young female child to someone with whom he was chatting online, and he admitted visiting websites that featured juveniles engaging in various sexual acts, would videotape them and transmit them to others.   Doc. 84, PSR ¶ 60.

The district court sentenced Defendant at the low end of the applicable guidelines range to a term of 180 months' imprisonment, followed by a life term of supervised release.   Docs. 92, 136.   It also denied her request for release pending appeal.   Docs. 85, 94.   Attorney Dingus was permitted to withdraw at sentencing and Barbara S. Sanders, Esq. was appointed for purposes of the appeal.   Doc. 105.

Defendant raised three issues on appeal.   *See* Doc. 147.   She claimed (1) the district court erred in denying her motion to suppress; (2) the district court erred in admitting "propensity" evidence at trial in the form of child erotica found on Defendant's computer; and (3) the evidence was insufficient to establish her knowing receipt or attempted receipt of child pornography.   The Eleventh Circuit rejected each of these arguments in turn.   With respect to Defendant's sufficiency of the evidence claim, the court found "regardless of whether reviewed *de novo* or for plain error, the Government presented sufficient evidence that Alford knowingly received or attempted to receive child pornography," and it went on the describe the evidence supporting the jury's finding.   *Id.* at 10-12.   The appellate court

affirmed Defendant's conviction on August 3, 2018.  *Id.* (ECCA Case 17-14073).

Defendant filed a timely pro se petition for rehearing with the Eleventh Circuit, after having been granted an extension of time in which to do so. She argued at length that she was factually and legally innocent of the charged crime.  The appellate court was not persuaded and summarily denied the petition on November 28, 2018.  Defendant did not file a petition for writ of certiorari, and therefore her conviction became final when the time for doing so expired, within 90 days of the appellate court's denial of a timely-filed motion for rehearing.  *Close v. United States*, 336 F. 3d 1283, 1285 (11th Cir. 2003) (citing Sup. Ct. R. 13.3).

In August of 2019, Defendant filed a motion for extension of time to file her § 2255 motion in this court.  Doc. 166.  On September 5, 2019 the district court denied the motion, noting "[i]f there were colorable grounds for a § 2255 motion—there are not—they could be presented during the limitations period, without an extension."  Doc. 171 at 2.  Defendant appealed this order (Doc. 175), and the appeal was dismissed for want of prosecution on November 21, 2019.  Doc. 188 (ECCA Case 19-13742).

In November of 2019, Defendant filed a bare bones "placeholder" document titled "Motion 28 U.S.C. 2255" dated November 18, 2019.   Doc. 187.   The motion included no factual or legal argument and did not identify the grounds for relief.   She subsequently filed an amended motion, raising eleven grounds for relief.   Doc. 182.   The motion, which was not on the proper court form and was well in excess of the 25-page limit set forth in the Local Rules, apparently crossed in the mail with the Court's order directing Defendant to amend.   Oddly, the amended motion contains a certificate of service indicating it was served on November 18, 2019, the same date as Defendant's "placeholder" motion.   However, it was not postmarked until December 2, 2019.   Doc. 192 at 51, 52.   Despite these discrepancies, the court accepted the motion as filed and ordered the Government to respond

Before the Government filed its response, Alford filed a 13-page "Motion on the Timeliness" in which she purported to address the timeliness of her motion.   Doc. 195.   The court denied the motion, to the extent it sought a definite ruling on the issue of timeliness, noting that it

would consider the issue of timeliness once the record was complete.
Doc. 196.

Defendant then filed a "Motion Acknowledgement Notice for Leave to
Amend" indicating she wanted to file additional grounds for relief in January
of 2020.   Doc. 197.   The court denied this motion without prejudice.   Doc.
198.

The Government filed a response to Alford's § 2255 motion on
February 20, 2020.   Doc. 200.   The Government concedes that
Defendant's motion was timely filed because it was filed within one year
from the date her timely petition for rehearing was denied on November 28,
2018 (*see id.* at 3-4), but argues that Defendant's claims for relief are
without merit.

On February 24, 2020, the clerk received a two-part document titled
"Memorandum" bearing both this court's criminal case number and the
appellate case number.   Docs. 202, 203.   The civil case number for the
§ 2255 motion was not written on either submission.   The two documents
were therefore docketed referencing the appellate case number.   It
appeared after review that the lengthy two-part documents, 109 and 119

pages long respectively, were directed to Alford's pending § 2255 motion, despite the page limitations previously explained to her.   The court entered an order accepting the documents as filed but indicated that the documents would not be considered absent a cogent explanation of their relevance to the pending § 2255 motion.   Doc. 204.

After moving for an extension of time to file her reply, Alford filed a "Motion Leave of Court to Amend § 2255 Motion and Memorandum."   Doc. 209.   She sought to supplement, rather than amend (replace) the pending motion, by adding legal citations and cross-references between the amended motion (Doc. 192) and the two-part memorandum (Docs. 202, 203).   Doc. 209-1.   The court granted her motion to the extent it would consider the supplemental filings in ruling on the § 2255 motion.

Alford then filed a reply to the Government's response (Doc. 211) and a pleading styled "Motion" (Doc. 210) in which she sought leave of court to exceed the twenty-five (25) page limit in her responsive pleading.   The court granted her request.

On August 21, 2020, the court received a request to supplement the record with a narrative statement of the case regarding facts that occurred

in the year 2002.   Doc. 230.   In the statement, Defendant complains of the injustice of her previous conviction, concluding she "shall never have any faith, trust, or respect, for this court or this country ever until the day [she dies.]"   *Id.* at 12.   The district court ruled that the narrative statement would be accepted as filed for whatever relevance, if any, it had, although noting the relevance was unlikely.   Doc. 236.

## II.    STATEMENT OF FACTS

On the evening of September 16, 2014, Michelle Haley ("Haley") was working her shift at a K-Mart in Hamilton, Montana, when the store received a call from a man requesting a price-check on K-Y Jelly. (Doc. 52 at 5; Doc. 134 at 30, 35-36).   After Haley returned with the price of the item, the man queried whether it would work for him and his six-year-old daughter "because it was her first time and she was tight."   Doc. 52 at 5; Doc. 134 at 30, 35-36.   Haley told the caller he was sick and hung up the phone, but not before taking down the caller's phone number.   Doc. 52 at 5-6; Doc. 134 at 30-31, 35-36.   Believing that the unknown man was planning to sexually assault his young daughter, Haley and her store manager

contacted the Hamilton Police Department.   Doc. 52 at 5-6; Doc. 134 at 30-31, 35-36.

Law enforcement took Haley's statement and determined that the caller's phone number was the generic caller identification number for calls made through Google Voice, "a service where users can place phone calls from their Google account[s]."   Doc. 52 at 6-7; Doc. 134 at 34-36, 40. Google confirmed that only one account had called the Hamilton K-mart number on the date in question, but refused to provide any further information without a court order.   Doc. 28, Exh. A. Hamilton Police Detective Stephen Brunner-Murphy ("Detective Brunner-Murphy") obtained a search warrant for any records in Google's possession that may aid in obtaining the identification and/or location of the unknown caller based on the fact the caller violated two state statutes.   Doc. 52 at 7; Doc. 134 at 36; Doc. 28-1 at 2.

Google identified a single account that had called the Hamilton K-Mart the evening of September 16, 2014: "michellecuty013."   Doc. 134 at 41-42, 48-49.   In accordance with the search warrant, Google turned over michellecuty013's subscriber information, Google Voice records, search

Case Nos.: 5:16cr28/RH/CAS; 5:19cv488/RH/CAS

history, and full email content, as well as a list of IP addresses used to access the account.   *Id.* at 42, 48; Doc. 52 at 14.   The subscriber information indicated the michellecuty013 account was opened in December 2008 under the name "Michelle Belly Dance" and had a recovery email of mikel@mikelsstudio.com.   Doc. 134 at 49-50, 52. Google Voice records confirmed the michellecuty013 account had made the call to the K-Mart.   *Id.* at 51-53.

Finding the subscriber information unhelpful, Detective Brunner-Murphy began reading through michellecuty013's 4,000 emails to try to identify the owner of the account.   *Id*. at 53-56; Doc. 52 at 22.   He observed that the owner went by either "Mikel" or "Michelle," had "some sort of furniture-type" business, and appeared to be "a male that's representing himself as a female or vice versa."   Doc. 134 at 53-56.   He also found a Youngstown, Florida address, but was still unable to discern the owner of the account.   *Id*.   Brunner-Murphy decided to reorganize the emails, filtering them by size so those with large attachments would appear first.   *Id*. at 56; Doc. 52 at 23.   When he played a video attached to one of the emails, "it became very apparent after a few moments" that the video

was "some sort of child pornography."    Doc. 52 at 23; Doc. 134 at 56-58.

The video depicted a young girl lying naked on a couch while an off-camera

female encouraged the girl to touch herself sexually.    Doc. 134 at 57-58.

Recognizing that child pornography made the investigation federal,

Detective Brunner-Murphy stopped his review of the emails and contacted

the FBI.    Doc. 52 at 19-20, 22; Doc. 134 at 58-59.    At that point, he still

had not identified the owner of the michellecuty013 account.    Doc. 52 at

19, 22; Doc. 134 at 59.

The Google records eventually ended up in the hands of Deputy

Matthew Williams of the Fort Walton Sheriff's Office and the North Florida

Internet Crimes Against Children Task Force ("Deputy Williams").    Doc.

134 at 62-66.    Deputy Williams reviewed emails from the michellecuty013

account and discovered eight emails with child pornography attachments.

*Id.* at 68-74, 106.    Looking at the IP address logs, Deputy Williams

determined that the same residential IP address (98.192.136.47) was most

commonly used to access the account, so he sent a subpoena to Comcast

for the records associated with that IP address.    *Id*. at 66-68.    The

information provided from Comcast listed "Mikel Alford" as the internet

subscriber and Defendant's home address as the service address.   *Id*. at

68.   After running the address through a law enforcement database,

Deputy Williams determined that Defendant and his parents Melvin and

Ethel Alford lived at the address.   *Id*. at 74-76.

Based on the child pornography, Deputy Williams obtained a search

warrant for the Alford residence, which law enforcement executed on

December 9, 2014.   Doc. 134 at 76-77, 82.   Law enforcement seized two

computers from the residence during the search, one laptop found in the

living room and a desktop kept in a computer room, as well as a cellphone

and notebook found in Defendant's bedroom.   *Id*. at 84-87, 90-91; Doc.

135 at 175, 177.   The notebook contained email addresses and

passwords, including the name and password of the michellecuty013

account, which had searched the internet for material related to teens

involved in sexual activity, similar to the searches found on the Google

account.   Doc. 134 at 87-88, 129-32; Doc. 135 at 197.   Deputy Williams

interviewed Defendant during the search.   Doc. 134 at 91-92.   Defendant

denied that he was behind the michellecuty013 account, that he had ever

used Google Voice, and that he owned either computer, though he

admitted to using the laptop for his business.    *See Id*. at 92, 98. Gov. Exhs.

42(a)&(b).    At trial, a neighbor testified that Defendant's father was not

"computer savvy" and identified the cell phone as one used by Defendant.

Doc. 135 at 231.

Forensic analysis of the laptop computer named revealed internet

searches for content related to young girls and teens involved in sexual

conduct, as well as searches for child pornography and child erotica.    Doc.

135 at 196-200.   The analysis also revealed over 30,000 images of child

erotica saved in over 170 subfolders.    *Id.* at 201-03.   Forensic analysis of

the desktop computer produced similar results: internet searches for "K-Y

Jelly Cherries," child pornography, and child erotica, along with 20,000

images of child erotica.    *Id.* at 209-10.   But the investigators also

recovered "over a hundred" thumbnail images of child pornography saved

in the desktop computer's thumb-cache and twenty-four images of child

pornography that had been previously deleted and subsequently recovered

using special software.    *Id*. at 210-15, 250, 253-55.   Both computers had

been used to log into the michellecuty013 account, and the desktop had

been used to log into the account in the early morning before the search.

*Id.* at 192-95, 207.   There were also eight emails that contained child

pornography.   Doc. 134 at 105, Exh. 6.

At trial, Defendant presented testimony from a forensic computer

expert who testified that there was no evidence that there was a direct

request for child pornography.   Doc. 135 at 250.   There were no

affirmative steps to maintain any of the child pornography.   *Id.* at 251.

There was no evidence any CP was sent out, no evidence that the emails

on Google account were solicited. Id. The Google information did not show

the "folder structure" of how emails were kept. The CP on the desktop was

in temporary or "cache files." There was no evidence that any of the CP

emails were ever opened or managed in any way. The Google CP emails

were sent to multiple recipients, which indicated that the emails were not

solicited.   *Id.* at 252 - 253.   Thumb caches are a completely automated

function of the operating system.   *Id.* at 254.   Finally, the expert testified it

is not at all uncommon to have thumbnails of images when the original

content was never actually viewed.   *Id*. at 255.


III.   ANALYSIS

A. Generally Applicable Legal Standards

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014).   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided

adversely to a defendant on direct appeal, it cannot, except in the case of an intervening change in the law, be re-litigated in a collateral attack under section 2255, as it is procecurally barred.   *Seabrooks v. United States*, 32 F. 4th 1375, 1383-84 (11th Cir. 2022) (citing *Nyhuis*, 211 F.3d at 1343 (collecting cases); *Davis v. United States*, 417 U.S. 333, 342 (1974)). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

By contrast, a "procedural default" occurs when a defendant attempts to raise a new challenge to his conviction or sentence in a § 2255 motion that could have been raised on appeal.   *Seabrooks*, 32 F. 4th at 1384 (citing *Lynn*, 365 F.3d at 1234).   If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused. *Id.* (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of

justice, or actual innocence.   *Id.*; *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021).   The Government can waive the affirmative defense of procedural default.   *Seabrooks,* 32 F. 4th at 1384 (citing *Foster v. United States*, 996 F. 3d 1100, 1106-07 (11th Cir. 2021)). It is true that a movant on collateral review can avoid the procedural default bar altogether "if the alleged error is jurisdictional." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (citing *United States v. Peter*, 310 F. 3d 709 (11th Cir. 2002).

A "§ 2255 movant 'bears the burden to prove the claims in his § 2255 motion.'" *Beeman v. United States,* 871 F.3d 1215, 1222 (11th Cir. 2017) *(quoting Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir. 2015)); *LeCroy v. United States,* 739 F.3d 1297, 1321 (11th Cir. 2014); *Barnes v. United States,* 579 F.2d 364, 366 (5th Cir. 1978) (holding that a § 2255 movant has "the burden of showing that he was entitled to relief").   This burden entails a secondary "burden to allege and prove facts which would entitle him to relief."   *Coon v. United States,* 441 F.2d 279, 280 (5th Cir. 1971). "In other words, the district court cannot grant relief in a § 2255

proceeding unless the movant meets his burden of showing that he is

entitled to relief . . . ."   *In re Moore,* 830 F.3d 1268, 1273 (11th Cir. 2016).


B. Defendant's Claims

a.   Grounds raised or that could have been raised on appeal

Defendant's first six grounds for relief challenge the sufficiency of the

evidence supporting various aspects of her conviction.   Doc. 192 at 6-24.

> Ground One: The Government presented insufficient evidence to prove that she received a zip file containing child pornography with an awareness of the content (*id.* at 6);

> Ground Two: The Government presented insufficient evidence that the images were received knowingly with an awareness of the computer software's automatic caching function that caused the creation of the unlawful files (*id.* at 9);

> Ground Three:   The Government presented insufficient evidence to prove unlawful thumbnail images were received "knowingly," with an awareness of the software's automatic caching function that caused them to be created or that they came from an "outside source (*id.* at 11);"

> Ground Four:   The Government presented insufficient evidence to prove that it was Defendant rather than some other person who was at the computer when the unlawful files were captured (*id.* at 15);

> Ground Five:   The Government presented insufficient evidence to prove the images were "received or possessed with an awareness

of the age, and sexual nature, in light of x-citement video (*id.* at 18);

Ground Six:   The Government presented insufficient evidence to prove the unlawful images traveled in interstate commerce (*id.* at 22).

Defendant claims Grounds Four and Six were not raised on direct appeal and the other four issues were raised only in part.

The Government contends Defendant's claims were addressed as components of one of the three issues she raised on direct appeal and the Eleventh Circuit resolved the issue against her.   Specifically, the appellate court stated:

> …the Government presented sufficient evidence for a reasonable jury to conclude that Alford knowingly received or attempted to receive child pornography where it presented evidence supporting an inference that he used the email and computers containing child pornography, he searched for and viewed the child pornography and he had not deleted the emails containing child pornography.

Doc. 147 at 12; *Alford*, 744 F. App'x at 656.   As noted above, Defendant presented a lengthy discussion of the sufficiency of the evidence in her motion to reconsideration to the appellate court.   Defendant's claims

regarding the sufficiency of the evidence are procedurally barred, defaulted

or both, and she is not entitled to relief.    *Seabrooks*, 32 F. 4th at 1383-84.

### b.  Ineffective assistance of counsel

In Ground Seven, Defendant identifies sixty-one alleged failings of

trial counsel.   Doc. 192 at 25-33.   His assertions include that Mr. Dingus

failed to effectively cross examine, failed to question witnesses on certain

matters including the intent of the statute, failed to investigate the law to

present evidence in Defendant's defense and various aspects of the facts

pertaining to her case, failed to interview "potential 'alibi witnesses,'" failed

to present evidence that the web searches she did were connected to her

business websites and that the images of the teen and pre-teen models

were innocent and legal (as stated by legal notices on the models'

websites.)

To prevail on a claim of ineffective assistance of counsel, a defendant

must show (1) his attorney's representation fell below "an objective

standard of reasonableness," and (2) a reasonable probability exists that,

but for counsel's unprofessional conduct, the result of the proceeding would

have been different.    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"The burden of persuasion is on a section 2255 petitioner to prove, by a

preponderance of the competent evidence, both that counsel's

performance was unreasonable, and that she was prejudiced by that

performance."    *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir.

2007) (quotation marks, brackets, and citations omitted).[3]  In applying

*Strickland*, the court may dispose of an ineffective assistance claim if a

defendant fails to carry his burden on either of the two prongs.    *Strickland*,

466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir.

2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he

court need not address the performance prong if the defendant cannot

meet the prejudice prong, or vice versa.").

　　　To determine whether counsel's conduct was deficient, this court

must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances."    *Strickland*, 466 U.S. at

688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th

---

[3] Neither the Federal Rules nor the Local Rules of this Court proscribe the citation of unpublished opinions.    *See* Fed. R. Civ. P. 32.1(a).    The Eleventh Circuit rules provide that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."    11th Cir. R. 36-2.

Cir. 2007).   Reviewing courts "must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable professional
assistance."   *Strickland*, 466 U.S. at 689; *see also Chandler v. United
States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption
of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d
362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to
error-free representation").   Counsel's performance must be evaluated
with a high degree of deference and without the distorting effects of
hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance
was unreasonable, a defendant must establish that "no competent counsel
would have taken the action that his counsel did take."   *Hollis v. United
States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted); *Chandler*,
218 F.3d at 1315.   The fact that a particular defense ultimately proved to
be unsuccessful does not demonstrate counsel's ineffectiveness.
*Chandler*, 218 F.3d at 1314.   "Counsel is not required to present every
nonfrivolous defense," since "[s]tacking defenses can hurt a case."   *Id.* at
1315.   Rather, "[g]ood advocacy requires winnowing out some arguments
... to stress others."   *Id*.   When reviewing the performance of an

experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish the second prong, prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963 F. 3d 1248 (11th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is the defendant's burden to provide factual support for her

contentions regarding counsel's performance.    *See Beeman v. United*

*States,* 899 F. 3d 1218, 1218 (11th Cir. 2018); *Smith v. White*, 815 F.2d

1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective

assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v.*

*Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale*

*v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v.*

*United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901

F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74

(1977)).    A defendant must identify the errors or omissions of which she

complains and explain how they affected the outcome of the proceedings.

*Boyd*, 697 F.3d at 1333.    A silent record is not sufficient to disprove the

strong and continuing presumption of effective representation.    "[W]here

the record is incomplete or unclear" about counsel's actions, the court "will

presume that he did what he should have done, and that he exercised

reasonable professional judgment."    *Harvey v. Warden, Union Corr. Inst.,*

629 F. 3d 1228, 1239 (11th Cir. 2011) (*quoting Chandler*, 218 F. 3d at

1314, n. 15).    Where "the evidence does not clearly explain what

happened, or more accurately why something failed to happen, the party

with the burden loses."   *Romine v. Head*, 253 F. 3d 1349, 1357 (11th Cir.

2001); *Williams v. Head*, 185 F.3d 1223, 1227–28 (11th Cir.1999) (where

due to the passage of time trial counsel who is charged with rendering

ineffective assistance does not recall all that he did or many of his thought

processes relating to the trial, we will presume that counsel did what he

should have done and that he exercised reasonable professional

judgment); *accord Wood v. Allen*, 542 F. 3d 1281, 1305 (11th Cir. 2008)

(holding that where defendant did not rebut the presumption that counsel's

decision not to present certain evidence was reasonable, his ineffective

assistance of counsel claim must be denied).

Furthermore, an attorney does not perform deficiently if he chooses

not to preserve or argue a meritless claim.   *Hollis v. United States,* 958

F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for

failing to raise meritless objection to use of prior drug convictions as

predicate offenses under ACCA); *Denson v. United States*, 804 F.3d 1339,

1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536

F.3d 1225, 1233 (11th Cir. 2008)) (counsel not ineffective for failure to raise

objection that was counter to the express language of the guidelines

commentary).   This is true regardless of whether the issue is a trial or

sentencing issue.   *See, e.g.*, *Lattimore v. United States*, 345 F. App'x 506,

508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless

objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d

1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise

issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th

Cir. 2001) (counsel not ineffective for failing to object to "innocuous"

statements by prosecutor, or accurate statements by prosecutor about

effect of potential sentence).

 Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.   *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099

(11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir.

2000).    Lawyers in every case could have done something more or different, and the issue is not what is possible, but only what is constitutionally compelled.    *Chandler*, 218 F.3d at 1313.    An attorney's performance is not deficient in hindsight just because he or she made one choice versus another.    *Scott v. United States*, 890 F. 3d 1239, 1259 (11th Cir. 2018).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)); *Sylvin v. United States*, 679 F. App'x 975, 976 (11th Cir. 2017).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).    Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain

course of action that counsel failed to take might have helped her case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

In this case, Defendant has not met her burden.   As noted by trial counsel in his affidavit, Defendant's allegations do not "address the ultimate question, which is how the proffered tasks [counsel] should or should not have done, would have cast reasonable doubt as to the verdict in this case."   ECF 200-2 at 2.   As the Supreme Court noted in *Strickland*, there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."   *Strickland*, 466 U.S. at 689.   Many of Defendant's complaints assail what are the epitome of strategic decisions, and do not support an ineffective assistance of counsel claim.   A defendant's belief that a different strategy would have been better does not meet his burden under *Strickland* because "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."   *Lukehart v. Sec'y, Fla. Dep't of Corrs*., 50 F. 4th 42, 47-48 (11th Cir. 2022) (quoting

*Ward v. Hall*, 592 F. 3d 1144, 1164 (11th Cir. 2010); *Kelly v. United States*, 820 F. 2d 1173, 1176 (11th Cir. 1987) (A strategic decision by defense counsel will be held to constitute ineffective assistance "only if it was so patently unreasonable that no competent attorney would have chosen it." (quotation omitted)).   An allegation of failure to call a particular witness is disfavored because "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980)).   The decision as to how and whether to cross-examine a witness is "a tactical one well within the discretion of a defense attorney." Messer v. Kemp, 760 F.2d 1080, 1090 (11th Cir.1985).   Absent a specific, factually supported instance where cross-examination could have affected the outcome of either the guilt or sentencing phase of the trial, the second *Strickland* prong remains unsatisfied.   *Id.*   In sum, trial counsel's "position in reaching [strategic] conclusions is strikingly more advantageous than that of a federal habeas court in speculating post hoc about his conclusions."   *Waters v. Thomas*, 46 F. 3d 1506, 1521-22 (11th Cir. 1995).

Defendant's Paragraph 52 of her allegations against counsel contains a factual inaccuracy.   Defendant complains that counsel "mislead [her] into testifying and telling her side of the story."   Doc. 192 at 31.   However, Defendant did not testify, and counsel states in his affidavit that he had advised Defendant not to do so.   Doc. 200-2 at 2.   Furthermore, counsel indicates that he discussed all the issues Defendant now raises with the computer expert the defense retained, Mr. Meinke.   *Id.* at 1.   Based on these discussions, counsel elected to employ a strategy of focusing on who, other than Defendant, could have downloaded the images in question, a defense that is imminently reasonable and not uncommon in such cases.

Many of Defendant's allegations are general and conclusory, and many others were presented to the appellate court in her motion for reconsideration.   Defendant has not identified any concrete, specific evidence that counsel could have uncovered if he had interviewed potential alibi witnesses.   Defendant's suggestion that counsel should have objected to or moved to suppress the illegal images because they did not cross state lines or come from an "outside source" is confusing, because surely she does not mean to suggest she produced them.   Finally,

Case Nos.: 5:16cr28/RH/CAS; 5:19cv488/RH/CAS

counsel's failure to secure an expert on gender identity disorder to attempt to explain Defendant's "emotional sensation towards children as it relates to this case" (Doc. 192 at 31) would not have explained the existence of the child pornography.

Defendant raises four claims relating to the jury instructions appearing to suggest that had different instructions been given she would have been acquitted due to her lack of "knowledge."    Doc. 192 at 32.    The Government's evidence provided strong circumstantial evidence of her knowledge, as noted above.    This evidence included that both the "michellecuty013" account and both computers seized revealed internet searches for child pornography[4] and erotica, child erotica was saved on both computers,[5] Defendant's seemingly false denial that the michellecuty013 account was hers or that she had ever used the desktop computer, and finally her 2003 conviction for similar conduct, suggesting an absence of "mistake."    Furthermore, the lack of instruction on "double

---

[4] Defendant claims, seemingly for the first time, she "never used search words to find kids having sex" but rather was "searching for 'legal case law' related to child porn" in an attempt to invalidate her prior conviction in this court.    Doc. 211 at 11.

[5] The district court ruled the child erotica was admissible pursuant to Rule 404(b) because it was probative of both "intent [and] absence of mistake."    Doc. 132 at 8-9.

jeopardy" (*see* Doc. 211 at 20) was not prejudicial, as Count Two was

dismissed at sentencing.    Defendant's suggestion that she was entitled to

multiple additional jury instructions is unsupported and she has not shown

that the jury instructions as given were legally infirm.    *See Parker v. Sec'y*

*Fla. Dept. of Corrs*., 555 F. App'x 870 (11th Cir. 2014) (failure to request

modified jury instruction not ineffective when no court had found standard

instruction deficient); *Brown v. Warden,* 562 F. App'x 779 (11th Cir. 2014)

(failure to request a jury instruction not warranted by the evidence is not

unreasonable).

     Defendant also faults counsel for not objecting to the witnesses and

misleading evidence on what she refers to as the "prank phone call" made

to the K-mart store that led to her apprehension.    She complains counsel

should have requested a separate instruction telling the jury it must not

consider the phone call as evidence because of "its highly inflammatory

and misleading nature."    Doc. 192 at 32.    Evidence of the phone call--that

Defendant has not denied making—was a critical part of the "backstory"

about the investigation and Defendant's arrest and it was properly

presented to the jury.

Case Nos.: 5:16cr28/RH/CAS; 5:19cv488/RH/CAS

In sum, Defendant has not shown that the way his attorney chose to defend this case, viewed as a whole and without the distorting effects of hindsight, was constitutionally ineffective.   *Strickland*, 466 U.S. at 689.

c.  Ineffective Assistance of Appellate Counsel

Defendant raises several claims of ineffective assistance against her appellate counsel Barbara Sanders.   In Ground Eight, Defendant contends the Government engaged in improper and unreasonable conduct that mislead and inflamed the jury resulting in prejudice to her, and that appellate counsel was ineffective for not raising these issues on appeal. ECF 192 at 33, 38.   In Ground Nine, Defendant claims appellate counsel was ineffective for failing to argue on appeal that the district court committed various errors that deprived Defendant of her right to a fair trial and to prepare a defense.   Doc. 192 at 39, 41.   Ground Ten alleges multiple errors of appellate counsel, including that counsel failed to raise arguments relating to Defendant's gender identity disorder as it related to her interest in and searches for teen and pre-teen modeling, and that presentation of this information to the jury inflamed its passion against her, and that counsel failed to argue that certain actions taken by Defendant

with respect to the illegal files did not constitute "knowing" receipt of the child pornography.   Doc. 192 at 41-43.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).   To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show that "(1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008)); *Padgett v. United States,* 791 F. App'x 51, 55 (11th Cir. 2019) (quoting *Shere*); *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*).

It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on appeal, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009). This is because the Sixth

Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Davila*, 137 S. Ct. at 2067 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)); *Brown v. United States*, 720 F. 3d 1316, 1335 (11th Cir. 2013). "Declining to raise a claim on appeal...is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila*, 137 S. Ct. at 2067 (*citing Smith v. Robbins*, 528 U.S. 259, 287–88 (2000)); *Stinfort v. United States*, (unreported) 2022 WL 2297758, *2 (11th Cir. Jun. 27, 2022) (finding it was not ineffective for counsel to focus on stronger arguments and weed out weaker ones).

For instance, in most cases "an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors." *Davila*, 137 S. Ct. at 2067 (citation omitted).   Also, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes,* 463 U.S. at 751–52. In fact, this is the "hallmark of effective appellate advocacy." *Murray*, 477 U.S. at 536. The

mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. *Id*.; *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) (counsel's appellate advocacy must be judged in its entirety); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*). Finally, as is the case at trial, counsel is not ineffective for failing to raise a meritless issue on appeal. *Shere*, 537 F.3d at 1311; *Brown*, 720 F. 3d at 1335 ("It is also crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim.")

Again, Defendant cannot show deficient performance under *Strickland.* She claims counsel told him "I will not raise any claims on appeal that I am not getting paid to do." Doc. 211 at 17, 26. However, Counsel chose to raise three strong issues: 1) denial of the motion to suppress; (2) admission of "propensity" evidence (child erotica); and (3) the sufficiency of the evidence. Doc. 147. That these three issues were unsuccessful does not alone render counsel's performance constitutionally

deficient because she chose to direct her focus to these claims and not to raise the claims Defendant now, in hindsight, wishes had been raised.

Finally, to the extent Defendant suggests appellate counsel was ineffective for not raising trial counsel's alleged ineffectiveness on direct appeal, she cannot establish a violation of *Strickland*.   Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Osborne*, 835 F. App'x 462, 463 (11th Cir. 2020).   Defendant has not shown that the Eleventh Circuit would have been willing to consider a claim on ineffective assistance of counsel on direct appeal, or more importantly, that the outcome of the proceedings would have been different had counsel raised this issue.

   d.  Unlawful Sentence

In Ground Eleven Defendant contends her sentence, including the term of supervised release and related conditions, is unreasonable,

overreaching, unconstitutionally overbroad and vague.   Doc. 192 at 43.
This claim could have been raised on appeal and as such it is procedurally
barred.   *Lynn*, 365 F. 3d at 1234-1235; *Bousley*, 523 U.S. at 621.

Even if the claims pertaining to this issue are not procedurally barred,
and the court liberally construes them as alleging ineffective assistance of
counsel, Defendant is not entitled to relief.   The court understands
Defendant believes that her sentence was unduly harsh, particularly given
her gender identity order.   She complains mainly of conditions that will be
imposed on her after she completes the custodial portion of her sentence.
She believes, for instance, that the requirement that she complete sex
offender treatment is a "waste of time" and she objects to conditions
proscribing her possession of child nudity or her unsupervised contact with
minors, allowing searches of her home, computer and other devices.

At sentencing, the district court must consider what conditions best
accomplish the purpose of sentencing.   18 U.S.C. § 3583(c).   The court
must consider the history and characteristics of the defendant, provide both
adequate punishment and rehabilitation of the defendant, and protect
society at large.   *Id.*   Section 5D1.3(d) of the Sentencing Guidelines is a

policy statement providing guidance to courts as to recommended "special"

conditions of supervised release.    For instance, a court may order a

defendant to participate in a mental health treatment program "[i]f the court

has reason to believe that the defendant is in need of psychological or

psychiatric treatment."    U.S.S.G. § 5D1.3(d)(5).    Similarly, a condition

imposing substance abuse programming or abstention "may otherwise be

appropriate in particular cases."    U.S.S.G. § 5D1.3(d) and (4).    Finally,

certain conditions including sex offender treatment, limitations on computer

use, and submission to searches—with or without a warrant--of personal

property including communication devices are also recommended for sex

offenses.    U.S.S.G. § 5D1.3(d)(7).    The instant case was Defendant's

second conviction, and imposition of these restrictions was within the

court's discretion.    Defendant contends "the conditions cannot be legally

imposed upon" her because she is an innocent person.    Doc. 211 at 26.

However, the jury found otherwise.

Defendant has not established that not one other competent

sentencing or appellate counsel would have refrained from challenging a

bottom of the guidelines sentence with standard discretionary conditions of

supervised release.    Nor has she shown that such a challenge would have been successful.    *See United States v. Moran*, 573 F. 3d 1132 (11th Cir. 2009).

## IV.    CONCLUSION

An evidentiary hearing is not necessary to resolve Defendant's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).    For the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, her motion should be denied in its entirety.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of

appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.     The motion to vacate, set aside, or correct sentence (Doc. 192) be **DENIED**.

2.     A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 8th day of November, 2022.

Case Nos.: 5:16cr28/RH/CAS; 5:19cv488/RH/CAS

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   An objecting party must serve a copy of its objections on all other parties.   A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 5:16cr28/RH/CAS; 5:19cv488/RH/CAS